IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

---

CHRISTIAN B. CONCANNON,      )
                            )
         Plaintiff,   )
                            )
   v.                 ) Civ. No. 19-00267-ACK-RT
                            )
ANDREW SAUL,             )
Commissioner of Social Security,   )
                            )
        Defendant.   )

---

**ORDER AFFIRMING THE DECISION OF THE
COMMISSIONER OF SOCIAL SECURITY**

For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner of Social Security.

**BACKGROUND**

In 2012, Plaintiff Christian B. Concannon ("Concannon") filed a Title II application for disability insurance benefits ("SSDI") and protectively filed an application for supplemental security income ("SSI"). Administrative R. ("AR") 222-31; see also AR 16. These applications were denied on July 23, 2012. AR 147-54. The SSDI claim was denied based on the determination that Concannon's condition was not disabling on any date through the date last insured, March 31, 2010. AR 147. The SSI claim was denied because Concannon failed to appear for an examination and the available evidence was insufficient. AR 151. When Concannon

1

did not request review of the denials, the 2012 decision became the Commissioner's final decision on the 2012 claims. AR 16, 279-80.

In 2015, Concannon again applied for SSDI and SSI benefits, alleging disability beginning on March 15, 2006. AR 235-42; see also AR 16. The application was denied initially and then upon reconsideration. AR 155-62, 164-69. Concannon requested a hearing before an administrative law judge ("ALJ"), which was held on December 6, 2017, and at which Concannon appeared and testified, with counsel present. AR 16, 186. Until the 2017 hearing, Concannon had handled his disability claims pro se.

On February 23, 2018, the ALJ issued his written decision finding that Concannon is not disabled. AR 16-27. As part of his decision, the ALJ concluded that the evidence considered in the prior decision on the 2012 claims was substantially the same as the evidence related to Concannon's current 2015 SSDI claim, which sought SSDI benefits up to the date last insured, March 31, 2010. AR 17. Accordingly, the ALJ applied res judicata to dismiss the portion of Concannon's request for a hearing on his 2012 claims. In other words, the ALJ limited his decision on the merits to only Concannon's current 2015 SSI claim addressing the period from the

application date—November 19, 2015—and declined to reopen the 2012 claims.

Concannon sought review by the Appeals Council, which declined to review the ALJ's decision. AR 1-6. The ALJ's decision thus became the Commissioner's final decision. Concannon filed a complaint in this Court on May 29, 2019, seeking review of the denial of his application for SSI and SSDI benefits. ECF No. 1. He filed his Opening Brief on November 17, 2019, ECF No. 14, and Defendant Andrew Saul, the Commissioner of Social Security (the "Commissioner"),[1] filed his Answering Brief on January 2, 2020, ECF No. 15. Concannon then filed a Reply on January 17, 2020. ECF No. 16. The Court held a telephonic hearing on the appeal on March 17, 2020.

## STANDARD

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security.[2]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, after the complaint was filed in this case. Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is "automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Accordingly, the case caption reflects Mr. Saul as the named defendant

[2] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

reviewing court if it is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards."  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  See id.  "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  Id. (internal quotation marks omitted).  Rather, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

But reviewing courts must be cognizant of the "long-standing principles of administrative law [that] require us to review the ALJ's decision based on the reasoning and factual

findings offered by the ALJ—not <u>post hoc</u> rationalizations that
attempt to intuit what the adjudicator may have been thinking."
<u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1225-26 (9th
Cir. 2009); <u>see also</u> <u>S.E.C. v. Chenery Corp.</u>, 332 U.S. 194, 196
(1947) ("If th[e] grounds [invoked by the agency] are inadequate
or improper, the court is powerless to affirm the administrative
action by substituting what it considers to be a more adequate
or proper basis").

## DISCUSSION

"To establish a claimant's eligibility for disability
benefits under the Social Security Act, it must be shown that:
(a) the claimant suffers from a medically determinable physical
or mental impairment that can be expected to result in death or
that has lasted or can be expected to last for a continuous
period of not less than twelve months; and (b) the impairment
renders the claimant incapable of performing the work that the
claimant previously performed and incapable of performing any
other substantial gainful employment that exists in the national
economy." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir.
1999); <u>see also</u> 42 U.S.C. § 1382c(a)(3)(B). A claimant must
satisfy both requirements to qualify as "disabled" under the
Social Security Act. <u>Tackett</u>, 180 F.3d at 1098.

**I. The Social Security Administration's Five-Step Process for Determining Disability**

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled.[3/] Dominguez v. Colvin, 808 F.3d 403, 405 (9th Cir. 2014); see also 20 C.F.R. § 416.920(a). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (citations omitted in original); see also 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Commissioner for step five. Tackett, 180 F.3d at 1098; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (noting that the burden shifts to the Commissioner at step five to show that the claimant can do other kinds of work).

At step one, the ALJ will consider a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds the claimant is engaged in substantial gainful activity, the ALJ will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience. Id. § 416.920(b). Substantial gainful

---

[3/] The relevant provisions governing SSI set forth in 20 C.F.R. Part 416 are identical to those for SSDI set forth in 20 C.F.R. Part 404. Accordingly, the Court will only cite to the former regulations.

activity is work that is defined as both substantial (work activity involving significant physical or mental activities) and gainful (work activity done for pay or profit). Id. § 416.972. If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. Tackett, 180 F.3d at 1098.

Under step two, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). Only if the claimant has an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities" will the analysis proceed to step three. Id. § 416.920(c). If not, the ALJ will find the claimant is not disabled and the analysis ends there. Id. § 416.920(a)(4)(ii).

The ALJ also considers the severity of the claimant's impairments at step three. 20 C.F.R. § 416.920(a)(4)(iii). Here, the ALJ will determine whether the claimant's impairments meet or equal the criteria of an impairment described in the regulations. Id.; see also id. § 416.925; id., Part 404, Subpart P, App. 1. If the impairments meet or equal these criteria, the claimant is deemed disabled and the analysis ends. 20 C.F.R. § 416.920(a)(4)(iii). If not, the analysis proceeds to step four. Id. § 416.920(e).

Step four first requires the ALJ to determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). RFC is defined as the most the claimant can do in a work setting despite his physical or mental limitations. Id. § 416.945(a)(1). In assessing a claimant's RFC, the ALJ will consider all of the relevant evidence in the claimant's case record for both severe and non-severe impairments. Id. The ALJ then uses this assessment to determine whether the claimant can still perform his past relevant work. Id. § 416.920(e). Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." Id. § 416.960(b)(1). The ALJ will find that the claimant is not disabled if he can still perform his past relevant work, at which point the analysis will end. Otherwise, the ALJ moves on to step five.

In the fifth and final step, the ALJ will again consider the claimant's RFC—as well as his age, education, and work experience—to determine whether the claimant can perform other work. 20 C.F.R. § 416.920(a)(4)(v). Here, the Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do." Id. § 416.960(c)(2); see also id. § 416.920(g). If the claimant is

unable to perform other work, he is deemed disabled.  Id. §

416.920(g).  If he can make an adjustment to other available

work, he is considered not disabled.  Id.

## II.  The ALJ's Analysis

The ALJ first held that the doctrine of res judicata

applied to the portion of Concannon's request for a hearing on

the SSDI and 2012 claims.  AR 17.  The ALJ explained that the

Commissioner had already made a finding of "not disabled"

through the date last insured, and that there was no basis to

reopen that determination.  AR 16-17.  Thus, the ALJ moved on to

address the merits of Concannon's 2015 SSI claim.

The ALJ found at step one that Concannon had not

engaged in substantial gainful activity since his application

date, and at step two that he suffers from the following severe

impairments: major depression (recurrent, in partial remission),

opiate dependence, attention deficit hyperactivity disorder,

inattentive type, and panic disorder with agoraphobia.  AR 19.

At the third step, the ALJ found that Concannon does not have an

impairment or a combination of impairments that meet or

medically equal the severity of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d),

416.925, & 416.926).  AR 19-21.

Moving to step four, the ALJ determined that Concannon

has the RFC to "perform a full range of work at all exertional

levels but with the following nonexertional limitations: he is
limited to simple tasks; he must work in a non-public
environment; he is limited to occasional interaction with
coworkers and supervisors." AR 21; see also AR 21-25. Using
this RFC, the ALJ determined at step four that Concannon is
unable to perform past relevant work. AR 25.

Finally, turning to step five, the ALJ determined that
a finding of "not disabled" was appropriate because Concannon is
capable of engaging in a type of substantial gainful activity
that exists in significant numbers in the national economy. AR
25-26. Specifically, the ALJ relied on the vocational expert's
testimony that Concannon would be able to perform certain
representative occupations, including "1) Janitor, DOT #323.687-
01, light, SVP 2, and with approximately 67,000 positions in the
U.S.; 2) Dishwasher, DOT #318.687-010, medium, SVP 2, and with
approximately 155,000 positions in the U.S.; 3) Salvager, DOT
#929.687-022, medium, SVP 2, and with approximately 43,000
positions in the U.S." AR 26.

## III.   Concannon's Challenge on Appeal

Concannon makes two primary arguments on appeal.
First, he argues that the ALJ erred in applying res judicata to
decline to reopen Concannon's 2012 claims because Concannon was
pro se at the time they were filed and because the ALJ
constructively reopened the SSDI claim by considering it on the

merits.  Second, he argues that the ALJ committed reversible error by improperly weighing the testimony of certain treating and examining medical professionals, and that the ALJ erred in his analysis of Concannon's credibility.

## IV.  Whether the ALJ Erred in Applying Res Judicata and Declining to Reopen the 2012 Claims

Concannon first argues that the ALJ erred by applying res judicata to decline to reconsider the 2012 claims.  Opening Br. 1; Reply Br. 1.  It is Concannon's position that (1) the ALJ constructively reopened the 2012 SSDI claim and (2) the ALJ should not have so rigidly applied res judicata because Concannon was pro se.  Opening Br. 8-14; Reply Br. 1.  The Court rejects Concannon's arguments.  Consistent with the discussion below, the ALJ did not constructively reopen the 2012 SSDI claim, and the decision not to do so was discretionary and not subject to judicial review.  As for the matter of Concannon being pro se, Concannon has relied on inapposite case law, and he has not presented any constitutional violation to warrant this Court's consideration of a claim otherwise not subject to judicial review.

### A. Applicable Law

District courts have jurisdiction to review "final decision[s]" of the Commissioner under 42 U.S.C. § 405(g).  Whether or not to reopen a previously-adjudicated claim for

benefits is "purely discretionary and is therefore not considered a 'final' decision within the meaning of § 405(g)." Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985) (citing Davis v. Schweiker, 665 F.2d 934, 935 (9th Cir. 1982)); see also Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) ("As a general matter, the Commissioner's refusal to reopen her decision as to an earlier period is not subject to judicial review."). "District courts, therefore, have no jurisdiction to review a refusal to re-open a claim for disability benefits or a determination that such a claim is res judicata." Krumpelman, 767 F.2d at 588.

There is an exception to this rule "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period." Lester, 81 F.3d at 827 n.3 (quoting Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988)). When that happens, the ALJ constructively reopens the prior claim by considering it on the merits, which then renders the prior claim reviewable by the district court. See id. But "[w]here the discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds, the decision should not be interpreted as re-opening the claim and is therefore not reviewable." Krumpelman, 767 F.2d at 589.

Even where the ALJ does not constructively reopen the prior claim, the Ninth Circuit has recognized that "res judicata principles should not be so rigidly applied as to 'contravene an overriding public policy or result in manifest injustice.'" Id. at 588 (quoting Thompson v. Schweiker, 665 F.2d 936, 940-41 (9th Cir. 1982)). Thus, this circuit has recognized certain exceptions to a district court's general lack of jurisdiction. Specifically, "[w]here the record is patently inadequate to support the findings the ALJ made, application of res judicata is tantamount to a denial of due process." Id. (quoting Thompson, 665 F.2d at 941). Otherwise, absent a constitutional challenge, district courts lack jurisdiction to review the Commissioner's denial of a petition to reopen a claim. See Califano v. Sanders, 430 U.S. 99, 108-09 (1977) (holding that court lacked subject-matter jurisdiction to review denial of a petition to reopen because the appeal was not "one of those rare instances" where the denial "is challenged on constitutional grounds").

**B. The ALJ's Decision**

The ALJ applied the doctrine of res judicata to dismiss Concannon's claims to the extent that they were already decided back in 2012. See AR 16. The ALJ described the July 23, 2012 determination, which was administratively final because Concannon did not request review within the relevant period.

13

Id.  After concluding that Concannon "had the mental capacity to understand the procedures for requesting review" and that none of the regulatory conditions in 20 C.F.R. § 404.988 for reopening existed, the ALJ declined to reopen the 2012 claims. Id. at 16-17.  In doing so, he explicitly stated that Concannon's "rights on the same facts and on the same issues are involved and the doctrine of res judicata applies."  Id. at 17. Therefore, the ALJ clarified, "the previous determination remains final and binding."  Id.

### C. The Parties' Arguments

Concannon challenges the ALJ's refusal to reopen the July 23, 2012 determination that Concannon was not disabled up to his date last insured, March 31, 2010.  See Opening Br. 8-11. Concannon's argument is two-fold.  See Reply 2-7.  He first argues that the Commissioner has waived the res judicata defense by constructively reopening the 2012 SSDI claim.[4/]  Opening Br. 9.  According to Concannon, the ALJ ruled "on the merits as to whether [Concannon] should be awarded SSDI benefits prior to his 2010 date last insured" and "admitted all of the records" of the

---

[4/]  Concannon partially relies on unpublished Ninth Circuit case Copeland v. Barnhard, 41 F. App'x 914, 916 (9th Cir. 2002) for this point. Opening Br. at 8-9.  As the Commissioner points out, Copeland is an unpublished case from 2002 and therefore violates Ninth Circuit Rule 36-3(c)(3), which prohibits cites to unpublished dispositions and orders issued before January 1, 2007, except for certain purposes or circumstances not relevant here.  Regardless, the Court need not rely on Copeland, as other cases discussed below sufficiently provide the relevant framework for the constructive reopening of a claim.

prior claim into the record.  Id.  Much of this argument hinges on the ALJ's single statement at the very end of the decision that "[t]he reconsideration determination dated July 6, 2016 remains the final determination with respect to [the 2012 claims]."  AR 26; see also Opening Br. 9.  Concannon's second argument is that, because he was unrepresented by counsel in his 2012 claims, res judicata should not bar reconsideration of those claims.  Id. at 9-10; Reply 4-7.

        In response, the Commissioner argues that the ALJ did not consider the merits of the previously-adjudicated period and that he in fact expressly declined to do so.  Ans. Br. 11-12. According to the Commissioner, "[t]he ALJ limited his analysis to evidence of Concannon's functioning in 2014, 2016, and 2017, and not once in his findings of fact and conclusions of law does he discuss any evidence prior to March 31, 2010 (AR 19-27)." Id. at 12.  Even though the ALJ included records from the prior 2012 claims, the Commissioner contends that ALJ did not consider that disability period "on the merits."  Id. at 13-14.  As to the ALJ's concluding statement purporting to render the July 2016 decision the final one, the Commissioner contends that this is a typographical error.  In his Answering Brief, the Commissioner does not address Concannon's arguments related to his status as an unrepresented claimant during the earlier claims.  See generally Ans. Br. 9-14.  When asked about this at

the hearing, the Commissioner argued that the cases Concannon relies on are factually distinguishable and that the ALJ applied the proper framework for deciding whether good cause existed for missing the deadline to request review.

### D. Analysis

Having carefully reviewed the parties' briefing and the relevant case law on this issue, the Court holds that (1) the ALJ did not constructively reopen the 2012 SSDI claim, and (2) the ALJ's decision not to reopen the 2012 claims is not subject to judicial review and no exception applies.

### i. Whether the ALJ De Facto Reopened the 2012 SSDI Claim

As stated, this Court generally lacks jurisdiction to review an ALJ's decision not to reopen a previously-adjudicated claim for benefits. See Krumpelman, 767 F.2d at 588. Concannon suggests that the ALJ here constructively reopened the 2012 SSDI claim, thus bringing it within this Court's purview. The Court disagrees. An ALJ constructively reopens a claim only by considering the prior claims relevant to the already-adjudicated period "on the merits." See Lester, 81 F.3d at 827 n.3. The ALJ here plainly did not do so.

The ALJ made clear in his decision that he was applying res judicata and declining to reopen the 2012 claims:

> The [ALJ] has compared the evidence considered in reaching the previous determination with

> that relating to the claimant's current claim.
> Based on this comparison, the [ALJ] finds that
> no new and material evidence has been
> submitted and that there has been no change in
> statute, regulation, ruling or legal precedent
> concerning the facts and issues ruled upon in
> connection with the previously adjudicated
> period. The record does not contain new and
> material evidence that discusses the
> claimant's functioning prior to the date last
> insured. Additionally, as already stated, the
> claimant's insured status expired prior to the
> previous determination. Accordingly, the
> claimant's rights on the same facts and on the
> same issues are involved and the doctrine of
> <u>res judicata</u> applies.

AR 17 (ALJ decision). As the Commissioner points out in his

Answering Brief, the ALJ's decision is also devoid of any

factual findings or legal conclusions related to the period

predating March 31, 2010.[5/] <u>See</u> Ans. Br. 12-13; AR 16-27.

Regardless, the ALJ was unequivocal that the earlier

2012 determination "stands as the final decision of the

Commissioner of Social Security" and that res judicata barred

reconsideration of the prior claims. AR 17; <u>cf.</u> <u>Krumpelman</u>, 767

F.2d at 589 (holding that the ALJ did not de facto reopen the

application because his decision explicitly refused to address

the merits); <u>Needham v. Astrue</u>, No. 2:12-cv-01147-AC, 2014 WL

4983653, at *7 (D. Or. Oct. 6, 2014) (holding that the

---

[5/] The Court acknowledges the reference to the GAF score from 2009 but
agrees with the Commissioner that the ALJ gave the scores "very little
weight." AR 23; <u>see also</u> Ans. Br. 12 n.6. A review of the ALJ's decision
certainly does not lead to the conclusion that this discussion amounted to a
review of the previously-adjudicated period "on the merits."

Commissioner did not reopen prior disability claim when "[t]he ALJ did not delve deeply into the merits of Claimant's first claim, and specifically concluded that Claimant's petition to reopen was denied on the basis of <u>res judicata</u>"). Indeed, because the decision otherwise makes clear that it is the 2012 determination that represents the final decision, the only logical explanation for the ALJ's single, unexplained reference to the July 2016 date is that it is an error.[6] The Court declines to read this single statement in isolation. Considering the totality of the ALJ's decision and analysis, the Court holds that the ALJ did not constructively reopen the 2012 SSDI claim by considering the pre-2010 time period "on the merits."

### ii. Whether the ALJ's Decision Not to Reopen the 2012 Claims is Subject to Judicial Review

Having found that the ALJ did not constructively reopen the 2012 SSDI claim, the Court now turns to whether any recognized exception applies to bring the ALJ's refusal to reopen the prior claims within this Court's jurisdiction. Concannon's argument on this point fares no better than his first.

---

[6] Not to mention, the Appeals Council later clarified that the "earlier determination dated July 23, 2012 about that [earlier] period stands as the final decision of the Commissioner of Social Security." AR 1-2.

That Concannon was unrepresented by counsel in the 2012 claims does not in itself operate to subject the ALJ's decision to this Court's review. Concannon contends that "the Ninth Circuit has repeatedly held, 'Nor is res judicata to be applied where the claimant was unrepresented by counsel at the time of the prior claim.'" Opening Br. 10 (quoting Lester, 81 F.3d at 827-28). Concannon's reliance on Lester for this "unrepresented by counsel" rationale is misplaced. Lester involved different circumstances; it addressed the presumption of continuing non-disability with respect to the unadjudicated period after the date of the prior decision. See Lester, 81 F.3d at 827. In other words, Lester addressed "[t]he Commissioner's authority to apply res judicata to the period subsequent to a prior determination"—which the court noted is "much more limited" than the Commissioner's authority to apply res judicata to the period "up to the date of the earlier decision." Id. (second emphasis added); see also Martinez v. Colvin, No. 13-cv-00985-MEJ, 2014 WL 2967600, at *7 (N.D. Cal. July 1, 2014) (distinguishing the exceptions between barring a claim extending to the period after the prior decision and a claim up to the prior decision).

At issue here is the latter situation: The ALJ applied res judicata only to bar reconsideration of a claim extending up to the date of the prior determination. He did not

apply res judicata prospectively to an unadjudicated period subsequent to the 2010 date the prior determination addressed.[7] Thus, the "much more limited" authority of the Commissioner discussed in Lester and relied on by Concannon does not apply here.

Concannon also relies on Gregory v. Bowen, 844 F.2d 664 (9th Cir. 1988). See Opening Br. 9-11. In Gregory, the Ninth Circuit declined to give res judicata effect to a prior decision, citing at least three different bases for doing so. First, the claimant's later application raised an entirely new issue of "psychological impairments." 844 F.2d at 666. Second, "[b]ecause [the claimant] was not represented by counsel when she filed her [earlier] claim, the rigid application of res judicata would be undesirable." Id. And, finally, the ALJ had effectively reopened the earlier claim by "considering on the merits the issue of [the claimant]'s disability during the time covered by the [earlier] claim," which "precludes agency reliance upon res judicata." Id.

---

[7] Because Concannon was unrepresented in the prior claims, application of res judicata would be inappropriate if the ALJ had done so. See Lester, 81 F.3d at 827-28; see also McDonald v. Barnhart, No. C 01-03738 WHA, 2002 WL 31663233, at *2 (N.D. Cal. Nov. 19, 2002) (explaining that, if the plaintiff had shown a change in circumstances, "the Commissioner's previous determination as to the earlier claim concerning the earlier time period should not have res judicata effect as to the subsequent time period"). Here, however, the ALJ did not presume a continuing non-disability past the date of the prior 2012 determination. Thus, the exceptions to such a presumption (unrepresented by counsel or changed circumstances) do not apply.

The Court is not persuaded that the rationale of Gregory controls here. Concannon has not pointed to entirely new circumstances (such as a new disability) or issues raised in the later application. Moreover, as discussed supra, the ALJ here did not de facto reopen the 2012 claims by considering them on the merits. Thus, the only similarity with Gregory appears to be that the claimants were both not represented by counsel. This Court certainly recognizes and takes seriously the exacting duty of an ALJ to develop the record and probe for relevant facts when considering a pro se claimant's disability claims. But Concannon has pointed to no authority or policy in support of his argument that the mere fact that he was unrepresented precludes the application of res judicata (let alone allows this Court to review a discretionary agency determination).

In fact, the ALJ here cited the relevant authority for deciding whether to reopen a claim, including circumstances where a claimant is unrepresented. The ALJ properly applied the regulation, which in certain cases allows the Commissioner to reopen a claim within four years upon a showing of "good cause," or at any time subject to enumerated conditions. See 20 C.F.R. § 404.988; AR 17; see also Ans. Br. 11 n.4. The ALJ stated that none of the enumerated regulatory conditions warranted reopening of the 2012 claims.

He also implied that "good cause" would not warrant reopening the claims (even though four years had already passed). The ALJ explained that Concannon had not sought review of the July 23, 2012 decision and that "the deadline for requesting review should not be extended under Social Security Ruling 9105p because at the time of the previous determination, [Concannon] had the mental capacity to understand the procedures for requesting review." AR 16. Ruling 9105p provides that reopening is appropriate when a claimant is <u>both</u> unrepresented and "lacked the mental capacity to understand the procedures for requesting review," including an inability to read or write, lack of facility with the English language, limited education, or any mental or physical condition which limits the claimant's ability to thinks for himself. Concannon has never asserted that his mental capacity falls within these guiding factors.

Moreover, none of Concannon's arguments suggests that the prior adjudication of the 2012 claims were unfair or that the record was "patently inadequate" to support the findings.[8] Concannon's only argument is that, once retained, Concannon's counsel "provided medical evidence from treating psychiatrist,

---

[8] Notably, Concannon had counsel present at the December 6, 2017 hearing before the ALJ on the 2015 application. AR 34-70. In discussing the reopening of the 2012 claims and advising that he would not be doing so, the ALJ even offered counsel an opportunity to give reasons why res judicata would be unfair. See AR 39 ("[I]f you think it's wrong or if you have good, strong argument otherwise, let me know."). Counsel did not take the ALJ up on this opportunity. See id.

Dr. Rudlowski, as well as records from Dr. Reed supporting both the initial SSDI and SSI claim." Opening Br. 10. However, these records, from 2011 through 2017, post-date the relevant period—through the date last insured in 2010—and Concannon has pointed to nothing specific in these records to suggest that the adjudicator's prior determination would not have been supported by those records. See Opening Br. 10 (citing AR 1012-1126, 1149-53, Dr. Reed's 2011-2017 examinations and 2011-2017 records of Dr. Rudlowski). Concannon is effectively asking for a re-do, which the Court cannot provide absent a showing of a constitutional deprivation.[9/]

Concannon's Reply Brief shifts its focus to Thompson v. Schweiker, 665 F.2d 936 (9th Cir. 1982), which Concannon describes as holding that "res judicata was inappropriate where the claimant was pro se, and new evidence overlapping the previously adjudicated time period, which did not support the ALJ's findings[,] was submitted." Reply Br. 5. Indeed, the court in Thompson acknowledges the important considerations of

---

[9/] Concannon's only assertion is that "the inclusion of these records could very well have resulted in a different decision." Opening Br. 11. Given that the records did not persuade the ALJ here in considering the 2015 application, the Court finds it unlikely that they would have changed the outcome for the earlier period. Regardless, this Court declines to disturb the discretionary determination of the Commissioner absent an alleged constitutional violation or injustice. See Califano, 430 U.S. at 109 (explaining that a constitutional claim requires something more than a request for "an additional opportunity to establish that [the claimant] satisfies the Social Security Act's eligibility standards for disability benefits").

an ALJ reviewing the claims of a pro se claimant.  665 F.2d at 941 ("When a claimant is not represented by counsel, the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." (citation and internal quotation marks omitted)).  But Thompson—in deciding to remand—cited specific shortcomings in the record and at the hearing.  See id. ("The ALJ asked Thompson no questions about his chronic alcoholism at the hearing. Nor did he investigate the conditions of Thompson's sheltered environment, his extended hospitalization, or the minimal work tasks he tried to accomplish. He made no effort to investigate Thompson's back problems or breathing impairment, which had worsened."). Concannon has not provided these types of specific concerns to suggest that the prior adjudication was inadequate.  Id.  Even though Concannon's counsel submitted the records of Dr. Rudlowski overlapping with the prior period through the date last insured, Concannon has not established that such evidence compels a different conclusion on the pre-2010 period.  Thus, absent any alleged constitutional violation, the Court declines to hold that the ALJ's invocation of res judicata was improper or inconsistent with the record such to give Concannon a second bite at the apple.[10]

---

[10]  Again, the Court is cognizant of the general exception to applying administrative res judicata when doing so would "contravene an overriding (Continued . . . )

For the reasons stated, this Court lacks jurisdiction to review the ALJ's decision to the extent that it is based on res judicata grounds. It was incumbent on Concannon to timely challenge the Commissioner's determination on the 2012 claims and the Court declines now—nearly eight years later—to disturb the ALJ's decision not to reopen those claims. Cf. Stuckey v. Weinberger, 488 F.2d 904, 911 (9th Cir. 1973) ("It would be wrong for the courts to intrude simply because the Secretary, exercising his discretion, chose not to relieve [the claimant] of the latter's neglect."). Simply put, because the ALJ's refusal to reopen Concannon's 2012 claims relied on res judicata and raised no constitutional issues, the decision is not reviewable by this Court. The ALJ's decision therefore stands in this respect, and the 2015 claims are res judicata for the period through March 31, 2010. The Court then turns to whether the ALJ's decision on the 2015 SSI claim is supported by the substantial evidence in the record.

## V. Whether the ALJ Erred in His Assessment of Certain Medical Opinions

The ALJ considered medical opinions issued by four doctors: treating psychiatrist Dr. Peter Rudlowski, examining psychologist Dr. Daniel Reed, and reviewing State agency

---

public policy or result in manifest injustice." Krumpelman, 767 F.2d at 588 (quoting Thompson, 665 F.2d at 940-41). The Court can conceive of situations where a claimant's unrepresented status could rise to this level, but Plaintiff has not shown here that such "manifest injustice" has occurred.

consultants R. Torigoe, Ph.D. and B. Young, M.D.[11/]  AR 23-25.

Concannon takes issue with the weight ascribed to each.

Primarily, he argues that the ALJ erred in failing to properly

weigh the opinions of Dr. Rudlowski and Dr. Reed in accordance

with the criteria set forth in 20 C.F.R. § 416.927(c), and in

failing to consider of all of each doctor's opinions.  Opening

Br. 12-17.

### A. Standards for Weighing Medical Opinion Evidence

In assessing whether a claimant is disabled, the ALJ

must "develop the record and interpret the medical evidence."

Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing

Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996)).  However,

the ALJ is not obligated to discuss "every piece of evidence"

where the evidence is "neither significant nor probative."  Id.

The applicable regulations state that the Agency will

consider all the medical opinions it receives.  See 20 C.F.R. §

416.927(b)-(c).  But in the realm of social security

adjudications, medical opinions are not all created equal:

"Cases in this circuit distinguish among the opinions of three

types of physicians: (1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant

---

[11/]  The ALJ cited opinion evidence from two other state agency
consultants as well—Drs. N. Shibuya and S. Lau—but their opinions were
limited to Concannon's physical condition.  See AR 19.  On appeal, Concannon
challenges the disability designation based not on his physical impairments,
but on his mental impairments.

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."[12/] Lester, 81 F.3d at 830; see also 20 C.F.R. § 416.927(c)(2). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Ukolov, 420 F.3d at 1004 (citation omitted). A treating physician's opinion should be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Ghanim, 763 F.3d at 1160 (quoting Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007)) (alteration in original). "To reject an uncontradicted opinion of a treating physician, the ALJ must provide 'clear and

---

[12/] The Court notes that for claims filed on or after March 27, 2017, the treating source rule does not apply. See 20 C.F.R. § 416.920c. Because Plaintiff filed his claim before March 27, 2017, the Court will apply the treating source factors consistent with the regulation.

convincing reasons that are supported by substantial evidence.'"
Id. at 1160-61 (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216
(9th Cir. 2005)).

"Even if a treating physician's opinion is
contradicted, the ALJ may not simply disregard it."  Id. at
1161.  Rather, to determine how much weight to give a treating
physician's opinion, the ALJ must consider several factors to
decide how much weight to give a treating doctor's opinion: the
length of the treatment relationship and frequency of
examination by the treating physician; the nature and extent of
the treatment relationship between the patient and the treating
physician; the supportability of the treating physician's
opinion with medical evidence; the consistency of the treating
physician's opinion with the record as a whole; and whether the
treating physician is a specialist.  Id.; see also 20 C.F.R. §
416.927(c)(1)-(6).

An ALJ may only reject a treating physician's
contradicted opinions by providing "specific and legitimate
reasons that are supported by substantial evidence."  Ghanim,
763 F.3d at 1161.  "The ALJ can meet this burden by setting out
a detailed and thorough summary of the facts and conflicting
clinical evidence, stating [his] interpretation thereof, and
making findings."  Tommasetti v. Astrue, 533 F.3d 1035, 1041
(9th Cir. 2008).  "The ALJ must do more than state conclusions.

He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. Id. at 1012-13.

Similarly, an examining doctor's opinion is entitled to greater weight than that of a nonexamining doctor. Lester, 81 F.3d at 830. The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining doctor. Id. at 830-31. And if the opinion is contradicted by another doctor, the ALJ can only reject it by providing specific and legitimate reasons that are supported by substantial evidence in the record. Id.

With this framework in mind, the Court considers whether the ALJ properly weighed the relevant medical opinions.

**B. Whether the ALJ Improperly Rejected the Opinions of Treating Psychiatrist Dr. Peter Rudlowski and Examining Psychologist Dr. Reed**

**i. Medical Opinions and the ALJ's Analysis**

Dr. Rudlowski is Concannon's treating psychiatrist and has been treating Concannon since at least 2008. See AR 1125. Records of Concannon's treatment with Dr. Rudlowski dating back

to well before the 2015 application date are included in the record.  See AR 357-58, 530-61, 569-97, 620-47, 1127-48.  The record also includes a medical source statement completed by Dr. Rudlowski in October 2017.  AR 1149-53.  In it, Dr. Rudlowski opined that Concannon's condition or treatment would cause more than three absences per month, and he identified symptoms including, inter alia, difficulty thinking or concentrating and distractability.  AR 1149-50.  Dr. Rudlowski stated that "medications have partially treated depression & anxiety symptoms" and noted that Concannon had moderate limitations in maintaining regular attendance, accepting instructions and responding to criticism from supervisors, getting along with co-workers or peers, and responding appropriately to changes in a routine work setting.  AR 1151.

The ALJ assigned "little weight" to Dr. Rudlowski's opinions, calling them "not well supported or generally consistent with the overall record."  AR 24-25.  The ALJ considered Dr. Rudlowski's opinions to be inconsistent with his own treatment notes and other medical opinions, and in conflict with Concannon's daily activities.  Specifically, the ALJ relied on three reported "activities":  (1) Concannon had been looking for a job and considering accompanying his friend to Texas in 2015; (2) Concannon reported going to church and "enjoying it"; and (3) Concannon reported that he was using an app that allowed

him to engage in "virtual stock trading" at a "pretty high
success rate."  AR 22.

Dr. Reed, an examining doctor, examined Concannon
several times dating back to at least 2011.  See AR 1121-1126.
Dr. Reed continuously opined that Concannon would be
incapacitated for the next six months.  In his reports, however,
he usually found that Concannon was "cooperative and respectful"
and that his "speech, language, memory, and cognition were all
within normal limits."  AR 23.

The ALJ assigned "little weight" to Dr. Reed's
opinions, noting that the opinions "are not well supported or
generally consistent with the overall record."  AR 24.  The ALJ
found Dr. Reed's own findings to be "inconsistent with his
limitations."  Id.  The ALJ went on to rely on the same three
daily activities he relied on to discount Dr. Rudlowski's
opinions, discussed above.

### ii. The Parties' Arguments

Concannon's arguments with respect to Dr. Rudlowski's
and Dr. Reed's opinions can be broken down into three main
points.  First, Concannon argues that the ALJ failed to consider
all the factors under 20 C.F.R. § 416.927(c).  Opening Br. 13-
14.  Second, he argues that the ALJ failed to consider all of
the opinions, ignoring some completely.  Id. at 14-15.  And

third, he argues that the ALJ failed to give specific and
legitimate reasons to reject the opinions.  Id. at 17-22.

The Commissioner replies that the ALJ is the final
arbiter and charged with resolving any ambiguities.  Ans. Br.
14.  He asserts that the ALJ gave specific and legitimate
reasons for explaining the weight afforded to Dr. Rudlowski's
and Dr. Reed's opinions.  According to the Commissioner, the ALJ
rightly noted inconsistencies between Dr. Rudlowski's 2017
medical source statement and his ongoing treatment notes,
between Dr. Reed's conclusions of incapacitation and his own
notations, and between both of these and Plaintiff's self-
reported daily activities.  Id. at 16-17, 21 n.8.  The
Commissioner seems to acknowledge that the record could
plausibly support a reading in favor of disability, but he
argues that "the ALJ presented an equally, if not more,
plausible reading, by highlighting the consistent evidence of
good functioning, improvement with treatment, and daily
activities inconsistent with claims of inability to focus on
simple work or get along with others."  Id. at 19.  Thus, the
Commissioner says, because this record could support either
outcome, the Court must affirm the ALJ's decision.  See id. at
19-20.

The Court will address each of Concannon's arguments in turn, which generally apply to the opinions of both Dr. Rudlowski and Dr. Reed.

### iii. Failure to Consider Factors in 20 C.F.R. § 416.927(c)

The Court holds that the ALJ gave proper consideration to the factors in 20 C.F.R. § 416.927(c). While Concannon is right that the ALJ did not analyze explicitly every single factor here, Opening Br. 13-14, he was not required to do so. Yantos v. Berryhill, No. 15-cv-02733, 2018 WL 899126, at *6 (S.D. Cal. Feb. 14, 2018). In fact, "the ALJ is not required to make an express statement that []he considered all these factors., nor need []he explicitly analyze them in h[is] decision." Kekaula v. Berryhill, Civ. No. 17-0051 ACK-KJM, 2018 WL 3146590, at *4 (D. Haw. June 27, 2018) (internal citation and quotation marks omitted).

The ALJ's decision reflects that while he may not have explicitly walked through his analysis of each of the regulatory factors, he did consider them. Indeed, the ALJ implicitly recognizes the treatment relationship between Dr. Rudlowski and Concannon. The ALJ cites several treatment records between 2015 and 2017, and while he does not state outright that Dr. Rudlowski had been treating Concannon since 2008, he spends a significant portion of his decision detailing not only Dr.

Rudlowski's medical source statement, but his ongoing conclusions in his treatment records as well. The ALJ does the same for Dr. Reed, listing the several examinations, his findings, and his ultimate findings of incapacitation for the next six months. See AR 23-24.

It is apparent from the ALJ's decision that he has considered and properly weighed the doctors' proffered limitations, while also accounting for another § 416.927(c) factor: the supportability and consistency of the medical opinion. See 20 C.F.R. § 416.927(c)(3)-(4). As for the specialization factor, see id. § 416.927(c)(5), it would have been unhelpful to flag the specializations when all four doctors—Dr. Rudlowski, Dr. Reed, Dr. Torigoe, and Dr. Young—are all plainly mental health specialists. See AR 21-25 (identifying doctors).

The ALJ's decision adequately reflects consideration of the regulatory factors. For that reason, the Court finds no legal error on this point.

### iv. Failure to Consider All Medical Opinions

Turning now to Concannon's argument that the ALJ erred in failing to consider all of Dr. Rudlowski's and Dr. Reed's medical opinions, Opening Br. 14-15, the Court again finds no error. Concannon assumes that an ALJ not addressing all the contents of an opinion means that he did not consider the entire

opinion.  The Court rejects this assumption.  The ALJ's decision

makes clear that he accounted for many of Dr. Rudlowski's

limitations and Dr. Reed's findings—to the extent that they were

consistent with the overall record—in assigning the RFC.  See AR

25 (discussing RFC limitations including Concannon being limited

to simple tasks, working in a non-public environment, and

limited to occasional interaction with coworkers and

supervisors).

An ALJ need not address every aspect of a medical

opinion or testimony when analyzing for disability benefits.

See Glenn v. Comm'r of Soc. Sec. Admin, No. CV-16-04268-PHX-DGC,

2017 WL 4349394, at *5 (D. Ariz. Oct. 2, 2017) ("It is

impractical for an ALJ to address every finding and every

statement in the record.").  Here, the Court is satisfied with

the ALJ's overview of Dr. Rudlowski's medical source statement

and his opinions reflected in years of treatment notes, as well

as of Dr. Reed's findings.  In particular, the ALJ patently

relied on the limitations and shortcomings recognized by Dr.

Rudlowski when assigning the appropriate RFC.  It would be

unworkable to require ALJs to explicitly restate every part of

every opinion.  These items are in the record for a reason, and

it not error to provide a summary—as opposed to a word-for-word

iteration—of the findings.

Here, the ALJ's findings and RFC designation reflect that he properly considered and weighed the medical opinions. Thus, the Court finds no error here.

### v. Failure to Give Specific and Legitimate Reasons for Discounting Medical Opinions

Concannon does not contest the fact that the ALJ provided specific reasons for limiting the weight he afforded to Dr. Rudlowski's and Dr. Reed's opinions. Instead, Concannon takes issue with the legitimacy of the reasons provided. See Opening Br. 17-20. Because Concannon seems to address this issue in two parts, the Court will do the same. First, did the ALJ err by viewing periods of symptom improvement in isolation to treat them as a basis for a finding of non-disability? And second, did the ALJ err by considering Concannon's daily activities to be legitimate reasons for rejecting Dr. Rudlowski's and Dr. Reed's contradicted opinions?

Where, as here, a treating or examining doctor's opinion is "contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[13/] Cf. Garrison, 759 F.3d at 1012 (quoting Ryan, 528 F.3d at 1198); Lester, 81 F.3d at 830. In doing so, "it is error for an ALJ to pick out a few

_____

[13/] As the ALJ recognized, Dr. Rudlowski's and Dr. Reed's opinions are contradicted by the opinions of State agency consultants Dr. Torigoe and Dr. Young. See AR 25.

isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017. Where there is a longitudinal picture of the claimant's therapeutic progress, an ALJ should consider the claimant's "overall well-being and the nature of her symptoms." Id.

Here, the ALJ did not selectively rely on findings on Concannon's capabilities to the exclusion of findings on Concannon's limitations. Rather, the ALJ carefully compared the Dr. Rudlowski's conclusions in his 2017 report supporting more restrictive limitations, with his own treatment notes and 2016 reports by two state agency consultants. He also weighed and considered other 2015-2017 records showing less-restrictive limitations and more controlled symptoms, as well as Dr. Reed's observations in his examination reports. Based on this comparison, the ALJ crafted an RFC accounting for Concannon's limitations.

For example, the agency reports of Dr. Young and Dr. Torigoe showed that Concannon "could sustain adequate concentration, persistence, or pace for a variety of tasks, under ordinary supervision" and that he is "capable of interacting with supervisors, the public, and coworkers with limited social contact." AR 25 (citing AR 105-16, 132-44). And many of Dr. Rudlowski's prior treatment records throughout the

relevant period suggested limited or no panic attacks and mild depression.  See AR 25.  Moreover, Dr. Reed had seen Concannon several times throughout the relevant period and concluded that Concannon's speech, language, memory, and cognition were all within normal limits and that Concannon was generally "cooperative and respectful."  AR 24.

As the Commissioner points out, the ALJ considered and weighed these varying opinions to understand the overall picture of Concannon's abilities and limitations throughout the relevant period, and he made a determination based on those opinions to assign an appropriate RFC.  Cf. Tommasetti, 533 F.3d at 1041 (explaining that the ALJ properly gives specific and legitimate reasons by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings").  It is the job of the ALJ—not this Court—to weigh the factual evidence and make credibility determinations.  The Court thus rejects Concannon's contention that the ALJ improperly relied on isolated periods of improvement.

Turning to the ALJ's reliance on Concannon's daily activities, the Court cannot say that the ALJ's findings are not supported by the substantial evidence.  Concannon argues that the ALJ erroneously relied on a few cherry-picked points regarding Concannon's capabilities and activities.  Opening Br.

17-20.  The ALJ relied on (1) other medical opinions, records, and treatment notes; (2) Concannon's prior self-reporting of his regular church attendance and his ability to successfully participate in virtual stock trading, and (3) Concannon's 2015 statements that he intended and was making plans to get a job and to travel to the mainland.  AR 23-25.

As stated, an ALJ may only reject a treating or examining doctor's contradicted opinions by providing "specific and legitimate reasons that are supported by substantial evidence."  Ghanim, 763 F.3d at 1161.  An inconsistency between a treating or examining doctor's opinion and a claimant's daily activities may be a specific and legitimate reason to discount a treating physician's opinion where "a holistic review of the record supports this finding."  Belmontez v. Colvin, No. ED CV 14-1590-PLA, 2015 WL 2063945, at *5 (C.D. Cal. May 4, 2015) (citing Ghanim, 763 F.3d at 1162).  But the Ninth Circuit has clarified that a claimant "need not be completely incapacitated to receive benefits."  Ghanim, 763 F.3d at 1162.  And many daily activities are not "easily transferrable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  Orn, 495 F.3d at 639 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Thus, when a claimant's activities are "not in tension

with the opinions of his treating providers," the ALJ may not
discount those opinions.  <u>Ghanim</u>, 763 F.3d at 1162-63.

The Ninth Circuit has clarified that an "occasional
indicia of improvement" or some "minimal capacity" to perform
basic activities is not "an adequate evidentiary basis to reject
the opinions of a treating physician or other treating
providers."  <u>Id.</u> (footnote omitted).  The court has also
cautioned against finding daily activities inconsistent with a
claimant's purported symptoms or limitations "because
impairments that would unquestionably preclude work and all the
pressures of a workplace environment will often be consistent
with doing more than merely resting in bed all day."[14/]
<u>Garrison</u>, 759 F.3d at 1016 (citing <u>Smolen v. Chater</u>, 80 F.3d
1273, 1284 n.7 (9th Cir. 1996); <u>Fair</u>, 885 F.2d at 603).

Here, the Court holds that a "holistic review of the
record" shows that the ALJ's findings are consistent with the
substantial evidence in the record and that his provided reasons
for discounting certain of Dr. Rudlowski's and Dr. Reed's

---

[14/]  Whether daily activities are inconsistent with a claimant's
purported symptoms or a doctor's opinion is inherently a factual inquiry.  In
some cases, the Ninth Circuit has held that a claimant's participation in
basic activities or household chores is not enough to conclude he is not
disabled, and in others it has held that such activities are evidence of
inconsistency.  <u>Compare</u> <u>Ghanim</u>, 763 F.3d at 1161-63 (holding that ALJ erred
in using claimant's household chores and occasional socialization to
undermine opinions of treating providers) <u>and</u> <u>Garrison</u>, 759 F.3d at 1015-16
(holding that ALJ erred in using claimant's activities—talking on the phone,
preparing meals, caring for her daughter—to undermine symptom testimony),
<u>with</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1113 (9th Cir. 2012) (affirming ALJ's
determination that claimant's purported "inability to tolerate even minimal
human interaction was inconsistent with her daily activities").

opinions are specific and legitimate.  For Dr. Rudlowski, the
ALJ began by summarizing his opinions but went on to cite
specific portions of the record—including Dr. Rudlowski's own
treatment notes—showing that Concannon's depression symptoms
were "mild," his panic attacks were minimal, and his symptoms
were generally controlled.  AR 24-25.  The ALJ also noted the
findings of examining Dr. Reed, which showed that Concannon was
"cooperative and respectful" and that his "speech, language,
memory, and cognition were all within normal limits."  AR 25.
The inconsistencies between Dr. Rudlowski's own treatment notes
and his ultimate conclusions, and between Dr. Reed's findings
and his conclusion of incapacity, are legitimate reasons for
undermining the opinions.  Making such credibility
determinations and interpreting the facts in the record are
tasks of the ALJ, not this Court.

        As to Concannon's daily activities, the ALJ carefully
cited the record to emphasize Concannon's enjoyment of regularly
attending church, his "high success rate" in the virtual trading
of stocks, and his intent to find a job and travel to Texas in
2015.  AR 25.  The Court accepts the first two activities—
attending church and trading stocks—as legitimate reasons for
discounting the doctors' opinions.  As to the third activity—
Concannon's stated desires to find a job and travel to the
mainland—the Court rejects this except to the extent that these

desires conflict with Dr. Rudlowski's opinions about Concannon's apparent lack of motivation, including to leave his home, and his inability to tolerate even minimal interaction.

Concannon's attendance at church and ability to participate in virtual stock trading are consistent with the substantial evidence in the record and provide a legitimate basis for disputing Dr. Rudlowski's and Dr. Reed's opinions. Cf. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (holding that claimant's ability to take walks, attend church, and go shopping were inconsistent with her purported "inability to tolerate even minimal human interaction"). While the Court recognizes that many of these citations in the ALJ's decision come from a compressed period and a few select records between mid-2015 and early 2016, an examination of the record as a whole for those and even later time periods suggest that these points are consistent with the overall picture of Plaintiff as a church-going member of the community who was engaging his stock trading skills—which he learned from his prior work as a stockbroker—and building up to at least some social interactions.  See, e.g., AR 1142 (reporting Plaintiff was swimming at his neighborhood pool and "going to the lagoons at Koolina"); AR 1143 (reporting that Plaintiff was going to church and a birthday party); AR 1146-47 (reporting that Plaintiff was discussing with Dr. Rudlowski "other venues to increase his

social interaction" and the possibility of joining a tennis league).  Although the ALJ did not cite all of these instances or activities specifically, they and other cites from the record offered by the Commissioner serve as examples of the three main buckets of "activities" recognized by the ALJ.  Cf. Warre v. Comm'r of Social Sec. Admin., 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (rejecting argument that Commissioner was supplying post-hoc rationalization even though the ALJ did not cite the evidence at issue, noting that "[t]he Commissioner is not asking this court to invent a new ground of decision; rather, the [evidence] simply is additional support for the Commissioner's and the ALJ's position").

The ALJ also used ongoing treatment notes in the record and Concannon's activities to show support for his conclusion that Concannon "could interact with coworkers and supervisors on an occasional basis."  AR 22.  While the Opening Brief portrays Concannon as unable to interact with others and so anxious that he is generally uncomfortable leaving his home, the ALJ's interpretation of the record of someone with benign symptoms who is able to engage in the community by attending church and occasional social events and to exercise his mind through virtual stock trading, is at least equally plausible. See Molina, 674 F.3d at 1113 (holding that ALJ's finding that the "claimed inability to tolerate even minimal human

interaction was inconsistent with [claimant's] daily activities during the disability period" was supported by the substantial evidence). The record supports the interpretation put forth by the Commissioner that after Plaintiff's previous unhealthy relationship ended and he moved in with a friend, he experienced a better emotional climate and his symptoms were generally improved and managed during the majority of the disability period.[15] See, e.g., AR 627-636. A holistic review of the record simply does not show the level of incapacity or commensurate level of deterioration to match the ultimate conclusions of Dr. Rudlowski or Dr. Reed.

In the same vein, Concannon's ability to participate in the virtual stock trading at a high success rate in particular at least "suggests that he could perform simple tasks with ease." AR 22. In that sense, Concannon's stock trading is inconsistent with Dr. Rudlowski's opinions to the extent that they conclude that Concannon has "[s]eriously limited functioning [that] [p]reclud[es] full-time employment requiring functioning" in remembering work-like procedures, understanding and remembering very short and simple instructions, and making simple work-related decisions. AR 1151. The ALJ's reliance on

---

[15] The Court notes that the ALJ did not specifically cite these aspects of the record. While this additional context provides additional support for the ALJ's decision, the Court has not weighted them to the extent that they are post-hoc rationalizations offered by the Commissioner.

44

Concannon's virtual stock trading to discount certain of Dr. Rudlowski's opinions—primarily with respect to Concannon's ability to complete simple tasks—is therefore sufficiently legitimate. For the other parts of the opinions, the ALJ adequately explain inconsistencies by relying on other activities, treatment notes, and conflicting medical opinions.

For his final reason for discounting Dr. Rudlowski's and Dr. Reed's opinions, the ALJ points to statements by Concannon in 2015—just before and after the application date—suggesting that Concannon wished to travel and find a job, and in 2016 stating that he wanted to be a stock broker again. The Court generally rejects these statements as legitimate for discounting Dr. Rudlowski's opinions on Concannon's work limitations. For one thing, some of these statements pre-date the application date. But even putting that fact aside, Dr. Rudlowski and Dr. Reed never suggest that Concannon is immobile or unable to do anything. That said, Concannon's desire to be able to work or engage more is inconsistent with Dr. Rudlowski's findings that Plaintiff struggles with motivation and a debilitating fear of leaving his home. The Court thus rejects the ALJ's reliance on Concannon's desires to travel with a close friend or to eventually work again as reasons to reject medical opinions, except to the extent that those desires conflict with opinions that Concannon largely lacks motivation.

For these reasons, the Court concludes that the ALJ
did not err because he provided specific and legitimate reasons
for rejecting Dr. Rudlowski's and Dr. Reed's opinions.

## VI.  Whether the ALJ Erred in His Credibility Finding

Finally, Concannon argues that the ALJ erred in
finding that his testimony was not entirely credible.  For many
of the same reasons the ALJ rejected the medical opinions
discussed above, the ALJ discounted Concannon's symptom
testimony as inconsistent with his daily activities.  The Court
holds that substantial evidence supports the ALJ's decision to
give limited weight to Concannon's characterization of his
symptoms.

"In assessing the credibility of a claimant's
testimony regarding subjective pain or the intensity of
symptoms, the ALJ engages in a two-step analysis." Molina, 674
F.3d at 1112 (citing Vasquez v. Astrue, 572 F.3d 586, 591 (9th
Cir. 2009)).  "First, the ALJ must determine whether there is
'objective medical evidence of an underlying impairment which
could reasonably be expected to produce the pain or other
symptoms alleged.'" Id. (quoting citing Vasquez, 572 F.3d at
591).  "If the claimant has presented such evidence, and there
is no evidence of malingering, then the ALJ must give 'specific,
clear and convincing reasons' in order to reject the claimant's
testimony about the severity of the symptoms." Id.

"'The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Id. In addition, "[a] finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray, 554 F.3d at 1227.

Here, the ALJ started by detailing Concannon's symptom testimony related to his anxiety, depression, opioid dependence, and ADHD. AR 21-22. The ALJ then concluded at step one that Concannon's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 22. At step two, the ALJ found that Concannon's statements concerning the "intensity, persistence and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the record . . . ."  AR 22.

The ALJ made specific findings in support of his decision to reject Concannon's testimony.  The ALJ observed that, according to these reports, Concannon reported no recent panic attacks.  AR 22.  The ALJ noted that the record "revealed enough symptom control" for Concannon to attend church and "sustain sufficient focus to enjoy sermons."  AR 22 (citing Rudlowski's 2015 records reporting that Concannon was attending church and "really enjoying it").  In assessing Concannon's credibility and his true ability to complete simple tasks, the ALJ questioned Concannon's testimony that he had become disinterested in the stock market since he stopped working as a stock trader back in 2006.  The ALJ discussed Concannon's apparent success playing on the virtual stock trading app, observing that the record indicates Concannon's ability to follow companies and make excellent investing decisions with a good return, even though he does not actually invest real money.  AR 22.  Finally, the ALJ cited Concannon's 2015 self-reporting that he was looking for work and may soon be traveling to the mainland to "do some housesitting."  AR 22 (citing 2015 records of Dr. Rudlowski).

The ALJ's reading of the record as conflicting to some degree with Concannon's own characterization of his symptoms is

supported by the substantial evidence.  As the Commissioner

states, at best "Concannon has offered only a competing

interpretation of the record," which is insufficient to warrant

remand under the deferential standard of review.  Ans. Br. at

25.

The ALJ could not reject Concannon's testimony as to

the severity of his symptoms solely because it was not

corroborated by objective evidence.  Light v. Soc. Sec. Admin.,

119 F.3d 789, 792 (9th Cir. 1997).  Here, however, the ALJ

properly concluded that Concannon could work with certain

limitations based in part on Concannon's activities of daily

living.  These activities include Concannon's attendance at

church, his success in virtual stock trading, and his stated

intentions that he was looking for a job and planned to travel

to the mainland to housesit with a friend.  See AR 24-25.

Although the Court largely rejected Concannon's stated desires

to travel or work as legitimate reasons for discounting medical

opinions, except to extent that they conflicted with opinions

that he lacked motivation, they do show—along with Concannon's

other activities discussed above (attending church and a party,

participating in virtual online trading, swimming at the

neighborhood pool, and considering joining a tennis league)—some

inconsistency with his stated symptoms and capabilities during

the period in question.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Ghanim, 763 F.3d at 1165). To find a claimant not credible, an ALJ may consider conflicts between a claimant's testimony and her own conduct or internal contradictions in her testimony. Light, 119 F.3d at 792. Such contradictions can include testimony that a claimant is unable to work, contradicted by evidence that a claimant is able to engage in substantial other activities of daily living. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ considered Concannon's testimony regarding his limitations as whole, together with his prior statements made to his doctors about his daily activities. The ALJ recognized that although Concannon had certain limitations stemming from his psychological impairments, he was capable of being in public and managing simple tasks, as shown by his engagement with the church and community and his online stock trading. Moreover, Concannon's stated desires to travel to the mainland and get a job, while not evidence that he in fact could do those things, do raise inconsistencies with Concannon's testimony that he is scared to leave his home and to interact with others. Concannon's testimony was even contradicted by the

medical opinions and Concannon's past self-reporting.  Even where Concannon's "activities suggest some difficulty functioning, they may be grounds for discrediting" Concannon's testimony "to the extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1113; see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that an "ALJ sufficiently explained his reasons for discrediting claimant's testimony" where the record showed "normal activities of daily living," which "tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.").

While the Court appreciates Concannon's psychological limitations and his testimony describing the scope of such limitations, it cannot say that the ALJ's determination is unsupported by the substantial evidence.  Thus, the Court holds that the ALJ did not err in concluding that Concannon's daily activities contradicted the severity of her symptoms as alleged.

## CONCLUSION

In sum, the Court is without jurisdiction to review the ALJ's decision to not reopen Concannon's 2012 claims, and Concannon has not established any exception to the application of res judicata.  As for the 2015 SSI claim, the ALJ did not

commit any legal error and his decision is supported by the substantial evidence in the record.  Accordingly, and for the foregoing reasons, the Court AFFIRMS the Commissioner's decision denying SSI and SSDI benefits.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, March 27, 2020.



_____
Alan C. Kay
Sr. United States District Judge

Concannon v. Saul, Civ. No. 19-00267 ACK-RT, Order Affirming the Commissioner of Social Security.